**STATE OF WEST VIRGINIA**
**SUPREME COURT OF APPEALS**

*In re* **B.A. and C.A.**

**No. 21-0179** (Kanawha County 20-JA-434 and 20-JA-435)

**MEMORANDUM DECISION**

Petitioner Mother T.A., by counsel Kevin P. Davis, appeals the Circuit Court of Kanawha County's February 12, 2021, order terminating her parental rights to B.A. and C.A.[1] The West Virginia Department of Health and Human Resources ("DHHR"), by counsel Patrick Morrisey and Brandolyn N. Felton-Ernest, filed a response in support of the circuit court's order. The guardian ad litem ("guardian"), Matt Smith, filed a response on behalf of the children in support of the circuit court's order. On appeal, petitioner argues that the circuit court erred in (1) adjudicating her as an abusing parent, (2) denying her request for an improvement period, and (3) terminating her parental rights.

This Court has considered the parties' briefs and the record on appeal. The facts and legal arguments are adequately presented, and the decisional process would not be significantly aided by oral argument. Upon consideration of the standard of review, the briefs, and the record presented, the Court finds no substantial question of law and no prejudicial error. For these reasons, a memorandum decision affirming the circuit court's order is appropriate under Rule 21 of the Rules of Appellate Procedure.

In September of 2020, the DHHR filed a child abuse and neglect petition after performing an investigation pursuant to a family court matter involving guardianship of then twelve-year-old B.A. and fourteen-year-old C.A. According to the DHHR, the children lived with the father and after he passed away in May of 2020, the paternal aunt, M.W., applied for and was granted guardianship of the children. Petitioner contested the guardianship and received visitation privileges with the children. The DHHR alleged that the children disclosed that petitioner

---

[1]Consistent with our long-standing practice in cases with sensitive facts, we use initials where necessary to protect the identities of those involved in this case. *See In re K.H.*, 235 W. Va. 254, 773 S.E.2d 20 (2015); *Melinda H. v. William R. II*, 230 W. Va. 731, 742 S.E.2d 419 (2013); *State v. Brandon B.*, 218 W. Va. 324, 624 S.E.2d 761 (2005); *State v. Edward Charles L.*, 183 W. Va. 641, 398 S.E.2d 123 (1990).

1

emotionally and physically abused them during visits. Specifically, C.A. reported that while she was visiting petitioner when she was eleven, petitioner's ex-husband raped her, and petitioner denied the allegation when C.A. told her. The worker interviewed petitioner who denied any knowledge of the sexual assault and also stated that she had not consistently seen the children in over a year. At the preliminary hearing, the court ordered that petitioner participate in parenting and adult life skills classes, submit to drug screens, and exercise supervised visitations.

Shortly after the petition's filing, C.A. and B.A. underwent Children's Advocacy Center ("CAC") interviews at Charleston Area Medical Center. The forensic interviewer drafted a summary regarding observations made during the interviews. C.A. disclosed severe emotional and physical abuse by petitioner, including yelling and screaming at her and B.A., smacking their arms, and whipping them with studded belts. C.A. stated that petitioner emotionally abused them with insults and putdowns and that petitioner told the children they "ruined her life." C.A. described details of the sexual assault that occurred in a trailer when she was eleven and stated that petitioner's ex-husband was the perpetrator. She explained that she had been staying with petitioner for a weekend and that petitioner was gone briefly while the assault took place. C.A. stated that B.A. did not witness the assault and that when she told petitioner the same day, petitioner refused to believe her and further refused to take her for medical care and evaluation stemming from the assault. C.A. explained that after the incident, she and B.A. only visited petitioner when required by court ordered visitation. During B.A.'s interview, she disclosed similar physical and emotional abuse by petitioner such as being slammed into chairs and being grabbed by her wrists. B.A. stated that she did not like petitioner because she was mean.

In late November of 2020, a visitation provider reviewed explicit and deplorable messages that C.A. received from a social media account appearing to belong to petitioner. The messages were threatening and insulating to B.A. and C.A., specifically called C.A. a "whore" for the alleged sexual assault with petitioner's ex-husband, and indicated that she burned the children's baby pictures. In response, the guardian requested that petitioner's visits cease, and all supervised visitations were stopped. That same month, the DHHR filed an amended complaint alleging that M.W.'s husband was a registered sex-offender with convictions from 2003 for two counts of first-degree sexual abuse and one count of attempted kidnapping. Accordingly, the DHHR removed the children from M.W.'s home and placed them together with a foster family.

The circuit court held a contested adjudicatory hearing in December of 2020. The worker testified consistent with the allegations in the petition, but also added that a criminal investigation had been opened due to C.A.'s disclosures of sexual assault. Next, the CAC forensic interviewer testified that she conducted interviews of B.A and C.A. during September of 2020 and that she drafted a summary after each interview. She stated the C.A. explained that she had not primarily lived with petitioner for the previous twelve years, and that at the time of the sexual assault, C.A. and B.A. were only visiting for a weekend. During the visit, C.A. and B.A. were alone with petitioner's ex-husband while petitioner was out for a short time. C.A. stated that she was coloring and breaking crayons in half. Petitioner's ex-husband saw this, became angry, and yelled at her to stop breaking the crayons. He then grabbed C.A. by her hair, dragged her to the bedroom, and sexually assaulted her. During this portion of the forensic interviewer's testimony, petitioner

interjected, "That's false." The forensic interviewer continued her testimony and stated that C.A. described the sexual assault in detail and reported that the assailant threatened to kill her family if she told anyone. C.A. remembered sitting in the living room crying when petitioner came home, and that petitioner joked that C.A. must have been spanked. C.A. stated that she told her mother the same day as the assault and petitioner refused to believe her and refused to take C.A. to the hospital to obtain a rape kit. After this incident, C.A. refused to visit petitioner, and the children only saw petitioner when required by court order. The forensic interviewer then turned to B.A.'s interview and stated that B.A. disclosed physical abuse by petitioner, such as being grabbed by the wrists and that petitioner's long fingernails dug into her skin. To this testimony, petitioner interjected, "False." The court then admitted the CAC summary containing B.A. and C.A.'s statements into evidence. Lastly, petitioner testified and denied all allegations of abuse, including whipping or hitting the children. She stated that B.A. is autistic and denied calling her names. She denied that her ex-husband assaulted C.A. because she never left the children alone with him. She further denied that C.A. disclosed any sexual assault to her. She stated that she had not had primary custody of the children for the past twelve years, and that during that time, she had filed for full custody four times but was unsuccessful. Having heard the evidence, the court adjudicated petitioner as an abusing parent.

By early January of 2021, a service provider who conducted parenting sessions with petitioner reported that petitioner completely denied C.A.'s allegations of sexual assault. The provider stated that petitioner made unrealistic statements like she never left the children alone with anyone despite her working or running errands and that the abuse could not have occurred at night because petitioner never slept when the children stayed with her. The provider further stated that petitioner claimed C.A. was lying regarding the identity of the perpetrator yet also said that she believed another male, a friend of the father, had sexually assaulted C.A. The provider noted that petitioner did not show affection when discussing the children, repeatedly labelled C.A. a liar, and was not concerned about the sexual assault allegations. The provider opined that petitioner had failed to show a willingness to protect the children from further abuse.

In late January of 2021, the circuit court held the final dispositional hearing, and petitioner filed a motion for an improvement period the same day. The DHHR worker testified that petitioner had complied with services, such as parenting and adult life skills classes and random drug screening. However, the worker stated that petitioner continued to deny C.A.'s allegations of sexual assault and claimed that C.A. was lying. The worker stated that visitations were ceased after C.A. received disturbing messages from a social media account appearing to belong to petitioner. The worker also stated that the children had not lived with petitioner for several years and that visitations with petitioner, both prior to and during the case, had been sporadic and harmful to the children. Both children expressly wished not to have contact with petitioner and stated that they had never had a good relationship with her. The worker opined that returning the children to petitioner would be detrimental to their welfare. Petitioner testified and denied sending any messages to C.A. through social media. She further stated that she was willing to comply with family counseling. Petitioner denied that C.A. had been sexually assaulted while she was in a relationship with her ex-husband, whom she divorced in 2016. Petitioner then called her landlord

who testified that petitioner lived in a small house and had lived there since 2015, which was contrary to C.A.'s timeline for the alleged assault in 2017—when C.A. would have been eleven.

At the conclusion of the hearing, the circuit court denied petitioner's motion for an improvement period. In light of the evidence presented at the dispositional hearing, the circuit court found that petitioner "had made no efforts to rectify or acknowledge the circumstances that led to the filing of the petition." Regarding petitioner's defense that she did not live with the ex-husband at the time of the alleged sexual assault, the court stated that it was not concerned with an exact timeline for C.A.'s allegations. The court noted that the guardian had spoken with the children, one of whom was fourteen and the other thirteen, and that they each expressed a desire to be adopted by their foster family. Based upon this evidence, the circuit court found that there was no reasonable likelihood that the conditions of abuse and neglect could be substantially corrected in the near future and that it was in the children's best interests to terminate petitioner's parental rights.[2] The circuit court entered an order reflecting its decision on February 12, 2021. Petitioner appeals from this order.

The Court has previously established the following standard of review:

> "Although conclusions of law reached by a circuit court are subject to *de novo* review, when an action, such as an abuse and neglect case, is tried upon the facts without a jury, the circuit court shall make a determination based upon the evidence and shall make findings of fact and conclusions of law as to whether such child is abused or neglected. These findings shall not be set aside by a reviewing court unless clearly erroneous. A finding is clearly erroneous when, although there is evidence to support the finding, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed. However, a reviewing court may not overturn a finding simply because it would have decided the case differently, and it must affirm a finding if the circuit court's account of the evidence is plausible in light of the record viewed in its entirety." Syl. Pt. 1, *In Interest of Tiffany Marie S.*, 196 W.Va. 223, 470 S.E.2d 177 (1996).

Syl. Pt. 1, *In re Cecil T.*, 228 W. Va. 89, 717 S.E.2d 873 (2011).

First, petitioner argues that the circuit court erred in adjudicating her as an abusing parent. According to petitioner, the DHHR did not meet its burden of proving any of the allegations of abuse and neglect by clear and convincing evidence at the adjudicatory hearing. Specifically, she argues that "there was no factual substantiation that her ex-husband sexually abused [C.A.]" as the "ex-husband was never charged with a crime." She also argues that the ex-husband was out of her life at the time the sexual assault allegedly occurred and that she no longer lived in the location described by C.A. during the CAC interview. She further argues that there was "no evidence of any physical abuse" of the children. We disagree.

---

[2]M.W. relinquished her guardianship rights of the children. The father is deceased. According to the parties, the permanency plan for the children is adoption by their foster family.

We have previously held as follows:

> At the conclusion of the adjudicatory hearing, the court shall make a determination based upon the evidence and shall make findings of fact and conclusions of law as to whether such child is abused or neglected . . . . The findings must be based upon conditions existing at the time of the filing of the petition and proven by clear and convincing evidence.

*In re F.S.*, 233 W. Va. 538, 544, 759 S.E.2d 769, 775 (2014). This Court has explained that "'clear and convincing' is the measure or degree of proof that will produce in the mind of the factfinder a firm belief or conviction as to the allegations sought to be established." *Id*. at 546, 759 S.E.2d at 777 (citation omitted). However, "the clear and convincing standard is 'intermediate, being more than a mere preponderance, but not to the extent of such certainty as is required beyond a reasonable doubt as in criminal cases.'" *Id.* (citation omitted). Further, West Virginia Code § 49-1-201 defines an "abused child" as

> [a] child whose health or welfare is being harmed or threatened by . . . [a] parent . . . who knowingly or intentionally inflicts, attempts to inflict, or knowingly allows another person to inflict, physical injury or mental or emotional injury, upon the child or another child in the home.

Having reviewed the record, we find that sufficient evidence existed to adjudicate petitioner as an abusing parent. C.A. and B.A. both disclosed multiple instances of emotional and physical abuse by petitioner, and C.A. reported a sexual assault that occurred while she was staying with petitioner on a weekend when she was approximately eleven years old. Also, contrary to petitioner's argument that petitioner's ex-husband was never charged with a crime, the DHHR worker testified at the adjudicatory hearing that the perpetrator was now under criminal investigation due to C.A.'s disclosures of sexual assault. Overall, petitioner's arguments in support of this assignment of error are all predicated on her assertions that the circuit court erroneously weighed the evidence in question. However, these arguments all concern the issue of credibility. In light of petitioner's defenses to C.A.'s allegations that she never slept when the children stayed with her and never left them alone with *anyone*, the court could reasonably find her testimony incredible. Also, the record shows that petitioner refused to believe that her ex-husband sexually assaulted C.A. yet claimed that another man who was a friend to the father had actually been the perpetrator. Despite this claim, petitioner continuously called C.A. a liar rather than act as if the sexual assault allegations were a serious concern to be explored, especially when petitioner claimed to know another possibility for the perpetrator. Moreover, the deplorable text messages sent to C.A. from a social media account bearing petitioner's name further damaged petitioner's credibility, despite her denial that she sent the messages. This Court has long held, "[a] reviewing court cannot assess witness credibility through a record. The trier of fact is uniquely situated to make such determinations and this Court is not in a position to, and will not, second guess such determinations." *Michael D.C. v. Wanda L.C.*, 201 W. Va. 381, 388, 497 S.E.2d 531, 538 (1997). Accordingly, we find no error in the circuit court's adjudication of petitioner.

Next, petitioner argues that the circuit court erred in denying her a post-dispositional improvement period because she passed every drug screen, participated in parenting and adult life skills classes, had independent housing, was employed, and was no longer in a relationship with her ex-husband. Petitioner argues that these efforts demonstrate that she should have been granted an improvement period. We find petitioner's arguments unavailing.

This Court has held that an individual "charged with abuse and/or neglect is not unconditionally entitled to an improvement period." *In re Emily*, 208 W. Va. 325, 336, 540 S.E.2d 542, 553 (2000). West Virginia Code § 49-4-610(3)(B) provides that the circuit court may grant a post-dispositional improvement period when the parent "demonstrates, by clear and convincing evidence, that the[y are] likely to fully participate in the improvement period." "This Court has explained that 'an improvement period in the context of abuse and neglect proceedings is viewed as an opportunity for the . . . parent to modify his/her behavior so as to correct the conditions of abuse and/or neglect with which he/she has been charged.'" *In re Kaitlyn P.*, 225 W. Va. 123, 126, 690 S.E.2d 131, 134 (2010) (citation omitted). However, the circuit court has discretion to deny an improvement period when no improvement is likely. *See In re Tonjia M.*, 212 W. Va. 443, 448, 573 S.E.2d 354, 359 (2002). Further, we have held that

> [i]n order to remedy the abuse and/or neglect problem, the problem must first be acknowledged. Failure to acknowledge the existence of the problem, i.e., the truth of the basic allegation pertaining to the alleged abuse and neglect or the perpetrator of said abuse and neglect, results in making the problem untreatable and in making an improvement period an exercise in futility at the child's expense.

*In re Timber M.*, 231 W. Va. 44, 55, 743 S.E.2d 352, 363 (2013) (citation omitted).

Contrary to petitioner's argument, we see no error in the circuit court's determination that petitioner was not likely to fully participate in an improvement period. The circuit court found that petitioner failed to acknowledge or take any responsibility for the conditions that led to the abuse and neglect of the children. While petitioner argues that she proved she was likely to participate in an improvement period by participating in drug screens, having appropriate housing, and participating in adult life skills and parentings classes, these actions alone could not prove that petitioner was likely to fully participate in an improvement period without her recognition of her abuse and neglect of the children. Further, a DHHR worker testified that that petitioner continued to call C.A. a liar and failed to acknowledge any wrongdoing, despite evidence of physical and emotional abuse. As such, there is ample evidence that petitioner's repeated failures to acknowledge the conditions of abuse and neglect resulted in her inability to establish that she was likely to fully participate in an improvement period. Given this evidence, we find no error in the circuit court's decision to deny petitioner an improvement period.

Likewise, we find no error in the termination of petitioner's parental rights. According to West Virginia Code § 49-4-604(c)(6), a circuit court may terminate a parent's parental rights upon finding that "there is no reasonable likelihood that the conditions of neglect or abuse can be substantially corrected in the near future" and that termination of parental rights is necessary for

6

the children's welfare. Petitioner is correct that West Virginia Code § 49-4-604(d)(3) provides that a circuit court may determine that there is no reasonable likelihood that the conditions of neglect or abuse can be substantially corrected when

> [t]he abusing parent or parents have not responded to or followed through with a reasonable family case plan or other rehabilitative efforts of social, medical, mental health, or other rehabilitative agencies designed to reduce or prevent the abuse or neglect of the child, as evidenced by the continuation or insubstantial diminution of conditions which threatened the health, welfare, or life of the child.

Here, although petitioner participated in adult life skills and parenting classes and submitted negative drug screens, she failed to respond to these rehabilitative efforts. The record shows that the provider noted that petitioner did not show affection when discussing the children, repeatedly labelled C.A. a liar, and was not concerned about the sexual assault allegations. The provider opined that petitioner had failed to show a willingness to protect the children from further abuse. Clearly, the evidence presented shows the continuation of petitioner's emotional abuse of the children.

Additionally, West Virginia Code § 49-4-604(d)(5) provides that a circuit court may determine that there is no reasonable likelihood that the conditions of neglect or abuse can be substantially corrected when

> [t]he abusing parent or parents have repeatedly or seriously injured the child physically or emotionally, or have sexually abused or sexually exploited the child, and the degree of family stress and the potential for further abuse and neglect are so great as to preclude the use of resources to mitigate or resolve family problems, or assist the abusing parent or parents in fulfilling their responsibilities to the child.

The record clearly shows that both children have disclosed extensive emotional and physical abuse by petitioner over the course of several years, and that both children stated that they never had a good relationship with petitioner. The children disclosed that petitioner insulted them and told them that they ruined her life. Notably, petitioner admitted that she had not had primary custody of the children for the previous twelve years. Given these issues, it is apparent that "the degree of family stress and the potential for further abuse and neglect are so great as to preclude the use of resources to mitigate or resolve family problems, or assist the abusing parent or parents in fulfilling their responsibilities to the child[ren]." *Id.* Accordingly, we find that ample evidence supported the circuit court's finding that there was no reasonable likelihood that the conditions of neglect or abuse can be substantially corrected in the near future.

We also find no error in the circuit court's finding that the termination of petitioner's parental rights was in the children's best interests. By the time of the dispositional hearing, C.A. was fourteen years old, and B.A. was thirteen years old. "Notwithstanding any other provision of this article, the court shall give consideration to the wishes of a child 14 years of age or older or otherwise of an age of discretion as determined by the court regarding the permanent termination

of parental rights." W. Va. Code § 49-4-604(c)(6)(C). The guardian interviewed both children and both expressed a desire to be adopted and that petitioner's parental rights be terminated. The guardian also expressed that both children were of the maturity to make known their wishes and that they understood the consequences.

Finally, insofar as petitioner argues that she was entitled to a less-drastic dispositional alternative, we have held that

> "[t]ermination of parental rights, the most drastic remedy under the statutory provision covering the disposition of neglected children, [West Virginia Code § 49-4-604] may be employed without the use of intervening less restrictive alternatives when it is found that there is no reasonable likelihood under [West Virginia Code § 49-4-604(d)] that conditions of neglect or abuse can be substantially corrected." Syllabus point 2, *In re R.J.M.*, 164 W.Va. 496, 266 S.E.2d 114 (1980).

Syl. Pt. 5, *In re Kristin Y.*, 227 W. Va. 558, 712 S.E.2d 55 (2011). As such, we find no error in the termination of petitioner's parental rights.

For the foregoing reasons, we find no error in the decision of the circuit court, and its February 12, 2021, order is hereby affirmed.

Affirmed.

**ISSUED**: November 8, 2021


**CONCURRED IN BY**:

Chief Justice Evan H. Jenkins
Justice Elizabeth D. Walker
Justice Tim Armstead
Justice John A. Hutchison
Justice William R. Wooton